**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH**

**RODNEY SMITH**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:17-CV-P187-GNS**

**CHARLES AARON DAVIS et al.**                                        **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Rodney Smith, a prisoner presently incarcerated at Kentucky State Penitentiary (KSP), originally filed this action in the Franklin Circuit Court (DN 1). The case was removed to the United States District Court for the Eastern District of Kentucky, and on November 29, 2017, the case was transferred to this Court. In his complaint, Plaintiff contends, in part, that Defendants, employees of the Commonwealth of Kentucky, violated his constitutional rights. Thus, the Court construes this action as being brought under 42 U.S.C. § 1983.

This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the following claims to proceed: (1) the Fourth Amendment unreasonable search claims against Defendants Rodriguez and Neely in their individual capacities; (2) the First Amendment retaliation claims against Defendants Belt, Beeler, Burnett, Epley, Fraliex, McCullough, Ben Mitchell, Seth Mitchell, Peck, Roberts, and White in their individual capacities; (3) the Eighth Amendment failure-to-treat claim against Defendant Davis in his individual capacity; and (4) the religion claim against Defendants Rodriguez and Neely in their individual capacities. The other claims and Defendants will be dismissed from this action.

# I. SUMMARY OF CLAIMS

Plaintiff identifies a total of fifteen Defendants.  Plaintiff states that fourteen of the

Defendants are employed by KSP and one Defendant is employed by Correct Care Solutions

(CCS).[1]  The fifteen Defendants are as follows:  (1) James R. Beeler a Lieutenant at KSP;

(2) Troy Belt, a Unit Administrator at KSP; (3) Wesley Burnett, a Correctional Officer (CO) at

KSP; (4) Charles Aaron Davis, a Registered Nurse employed by CCS and working at KSP;

(5) Lauren Epley, an employee of KSP; (6) Brittany Fraliex, a CO at KSP; (7) Monica

McCullough, a CO at KSP; (8) Joy Meyers, a Social Service Clinician at KSP; (9) Benjamin D.

Mitchell, a Case Treatment Officer at KSP; (10) Seth T. Mitchell, an employee of KSP;

(11) Brian Neely, a CO at KSP; (12) Marshall E. Peck, an employee of KSP; (13) Charles

Roberts, an employee of KSP; (14) Gage Rodriguez, a Sergeant at KSP; and (15) Randy White,

the Warden at KSP.  All Defendants are sued in their individual and official capacities.  As relief,

Plaintiff seeks compensatory and punitive damages.  He also wants the Adjustment Committee

decision to be vacated, the "matter to be rescinded from [his] Department of

Corrections/Kentucky State Penitentiary institutional records and files," and his good-time

credits restored.  Additionally, Plaintiff seeks a declaration that Defendants "each and together

have violated [Plaintiff's] State and Federal rights."

In his complaint, Plaintiff states that on February 24, 2017, he was enrolled in the

"Segregation Transition Unit Group in attempt to have his Segregation Sentence subsequently

suspended upon successful completion."  Plaintiff states that on April 17, 2017, while he was

showering, Plaintiff believed Officer Muncher "molested and/or violated his intimate privacy

and persons, Ergo [Plaintiff] verbally complained to . . . Supervisor/Lieutenant, Samantha Paris."

---

[1] Plaintiff states that CCS "is contracted By the Kentucky Department of Corrections, . . . as [a] Medical Care Provider.

On the following day, April 18, 2017, Plaintiff states that Defendant Rodriquez, "along with a non-defendant," removed Plaintiff from the Segregation Transition Unit Program at approximately 10:20 a.m. and relocated him to 3 cell house 12-Right. Plaintiff states that during the transfer he made a "PREA (Prison Rape Elimination Act) claim on [Defendant] Rodriguez." The PREA claim, according to Plaintiff, was investigated by Defendant Roberts. Plaintiff states that he received a disciplinary report because Defendant Roberts found that Plaintiff made the PREA claim in bad faith.

Further, during the transfer, Plaintiff states that he "was deprived the opportunity to pack his personal and State Belonging." However, according to Plaintiff, his property was returned later in the evening. According to Plaintiff, at approximately 2:20 p.m. on April 18, 2017, he was placed on property restrictions, and Defendant Rodriguez conducted an inventory of Plaintiff's property and "annotated that an ipod was missing." Plaintiff states that at 2:22 p.m. Defendants Rodriguez and Neely came to Plaintiff's cell to remove him and take him to the "cell house strip cage." Apparently, Plaintiff received a disciplinary report for alleged indecent exposure for activity which took place at this time. Plaintiff states that he was placed in wrist and ankle restraints. Plaintiff states that he was "forcefully placed against the exterior wall" while being removed from the cell. According to Plaintiff, "[a]t this time [Defendants] Rodriguez and Neely forcefully with Malicious intent, wedged [Plaintiff's] under garments and trousers in Between [Plaintiff's] Buttocks in an attempt to" dislodge the missing iPod from Plaintiff's "cavity." Plaintiff states that nothing was found at this time, and he was escorted to the "12 left and right Officer Station, which is one of many sections in the 'Restricted Housing Unit.'"

Plaintiff states that he was "stopped and placed up against the hall-way crash gate." Thereafter, according to Plaintiff, Defendants Rodriguez and Neely "elevated [Plaintiff's] arms above head, at which time [Defendant] Rodriguez pulled [Plaintiff's] trousers and under garments down and went inside the anal cavity with [Defendant] Rodriguez's hand." Plaintiff states that he began to "execute 'PREA' prevention tactics" previously taught to him, and he "yelled out loud enough to bring attention and awareness to the area to scare, discourage and cause [Defendants] Rodriguez and Neely to cease their illegal acts of sexual abuse." According to Plaintiff, at this point Defendants Rodriguez and Neely "yanked [Plaintiff] down the stairways in route to the cell house strip cage with [Plaintiff's] Male extremities exposed along with Buttocks for view of inmate sexual predators and male and female staff." Plaintiff asserts that this "sexual molestation" violated his "rights under Article four of the U.S. Constitution 'illegal search' it also violated a tenant of [Plaintiff's] Religious Beliefs as a professed Muslim."

Plaintiff states that he continued to scream and yell and that Defendant Rodriguez threatened Plaintiff with pepper spray. Plaintiff states that Defendant Rodriguez told Plaintiff, "If you Don't Shut up I'll Beat Your (word omitted)." Plaintiff states that there is no surveillance in the strip cage, so he requested a hand-held camera to "insure" his safety. Plaintiff states that the video recording shows that upon his arrival in the strip cage, Plaintiff's trousers and undergarments were at his ankles. According to Plaintiff, his clothing was then exchanged, and he was "re-restrained and escorted Back to cell, located on 12-Right." Plaintiff states that when arriving at his cell there were officers in the cell trying to locate the "alleged missing ipod." When asked by Defendant Rodriguez if they had found the iPod, the officers searching Plaintiff's cell responded that they had not. According to Plaintiff, Defendant Rodriguez "delegated [Plaintiff] to be stripped out." Thereafter, Plaintiff states that his personal property

and hygiene items were removed from his cell for 24 hours. Plaintiff states that this is permissible according to institutional policy promulgated through Defendant White. Although unclear, it appears that Plaintiff states that there were feces and urine on the floor of this cell.

On April 19, 2017, according to Plaintiff, he informed psychologist Gene Reaney of his living conditions. Plaintiff states that he was then moved to another cell. According to Plaintiff, he was moved "in Solely" his boxers while being "video'd surveilled." Plaintiff states that Defendant Rodriguez continued to "harass, intimidate and Deprive [Plaintiff] of Constitutional necessities, a Mattress." Plaintiff states that Defendant Rodriguez told Plaintiff, "thats how Muslims shall Be treated in America . . . You're a Rat." Plaintiff states that on April 25, 2017, he "was given Back state issued property, ie. clothing and Bed linen."

Also on April 25, 2017, Plaintiff represents that he was escorted to medical to be seen by Defendant Davis. Plaintiff states that the visit was to be for "pain of the rectal cavity . . . that was the result of [Defendant] Rodriguez entering [Plaintiff's] Anal cavity on April 18, 2017." Plaintiff states that Defendant Davis questioned Plaintiff about the names of the individuals Plaintiff alleged molested him, as if Defendant Davis "was More Concerned of the incident and/or activity than the well-being and Safety of [Plaintiff]." Plaintiff states that thereafter Defendant Davis "told the escorting officers the visit was terminated." According to Plaintiff, he was escorted back to his living area.

Plaintiff states that on April 26, 2017, Defendant Rodriguez removed Plaintiff from his cell to escort him to a visitation area on 12-left. Plaintiff states that along the way, Defendant Rodriguez "forcefully Placed [Plaintiff] against a wall." Plaintiff states that he began to yell out for someone in fear for his safety. According to Plaintiff, while in the visitation cage, Plaintiff was asked by a person named Coombs about what was going on. Plaintiff states that Coombs

threatened and intimidated Plaintiff by "shaking an 'MK9' Mace can." Plaintiff inquired as to whether Coombs and Defendant Rodriguez were going to kill him. Plaintiff reports that Coombs responded, "Maybe."

Plaintiff lists various disciplinary reports (DR) he received. On April 25, 2017, he received DR# KSP-2017-00920 which was issued by Defendant Seth Mitchell. On April 26, 2017, Plaintiff received DR# KSP-2017-00931 which was also issued by Defendant Seth Mitchell. On May 2, 2017, Plaintiff was issued DR# 2017-KSP-00869 which was issued by Defendant Seth Mitchell "while conducting a PREA investigation." Although unclear, it appears that Plaintiff states, as to this disciplinary report, that Defendant Beeler found Plaintiff guilty of tampering with physical evidence or hindering an investigation. On May 3, 2017, Plaintiff received DR# KSP-2017-00994 issued by Defendant Seth Mitchell. On May 20, 2017, Plaintiff received DR# KSP-2017-01133 issued by Defendant Burnett.

Seemingly, Plaintiff refers to two other disciplinary reports that he says were issued by Defendants Seth Mitchell or Roberts. Plaintiff describes the disciplinary reports as charging Plaintiff with making a PREA claim in bad faith. Plaintiff asserts that Defendant Seth Mitchell violated "every aspect of 'Confidentiality' . . . when [he] knowingly placed in the face of the disciplinary the exact illustration in which [Plaintiff] Detailed in the grievance submitted on claims of PREA." Plaintiff states that this subjected him to "acts of retaliation by any Meens and reprisal, once this said disciplinary report was forwarded to the Adjustment Committee for review." Plaintiff further appears to contend that the disciplinary violations should not have been a category 5, but a category 3, and that Defendant Seth Mitchell made them a category 5 in retaliation for Plaintiff filing grievances and PREA complaints. Plaintiff states that "it should be deemed when Conducting the investigation into [Plaintiff's] Claims of [Defendant] Rodriguez's

Sexual Misconduct . . . there was more than a Modicum of evidence to support [Plaintiff's] claims." Plaintiff further states that "[t]o issue a disciplinary report when an inmate initiates legal redress and begins to exhaust their administrative remedies to be in compliance with the Prison Litigation Reform Act, is Kentucky State Penitentiary's Machinated Thwart process to deter and Deprive and/or negate this requirement."

As to the "alleged theft of an ipod," Plaintiff states that Defendant Rodriguez violated Corrections Policies and Procedures (CPP) 9.8 because Plaintiff was not present during the cell search as the policy requires. Plaintiff states that Defendants Belt, McCullough, and Epley found Plaintiff guilty of stealing or possession of stolen goods and assessed Plaintiff restitution in the amount of $50.00. Plaintiff states that Defendant White concurred with the findings. Plaintiff points out that he signed an agreement stating that if the iPod was damaged or altered that he would be held responsible for the restitution cost of the iPod. Plaintiff states that this is a legal contract to which he is bound. Plaintiff asserts that he was found "guilty void of any evidence and soley on the Blind assertion of [Defendant] Rodriguez stating he couldn't find it . . . and Due to [Defendant] Meyers stating, 'Smith did happen to have the ipod on this date.'" Further, Plaintiff states that the iPod is "deemed dangerous contraband" as defined by "KRS 520.010" and "CPP 9.6 II. B." Plaintiff states that Defendant Meyers introduced this contraband into the institution and that she may be prosecuted.

Plaintiff states that the disciplinary report by Defendant Rodriguez in which Plaintiff was charged with "Eluding or Resisting apprehension" is "a clear display of retaliation." Plaintiff states that Defendants Beeler, Fraliex, and Benjamin Mitchell, the members of the adjustment committee, found Plaintiff "[g]uilty to guarantee [Plaintiff] receives More Segregation time and is unable to grieve the acts and omissions of [Defendants]." Plaintiff states that Officer Jenkins

reviewed the "hand held video camera; at no time does he report he seen [Plaintiff] Resist apprehension." Plaintiff states that he informed the members of the adjustment committee that he had contacted the Department of Public Advocacy about being sexually molested by Defendant Rodriguez. Plaintiff asserts that this "gave prerequisite knowledge to [Defendant] Rodriguez's parties, agents and Successors to protect him By all means." Plaintiff states that two incidents occurred in April, but were not reported until May. Plaintiff concludes that Defendant Rodriguez "Back Dated incidents of alleged wrong-doings By" Plaintiff. According to Plaintiff, Defendant White concurred in the finding of guilt.

In the "Conclusions" portion of his complaint, Plaintiff summarizes his claims. He claims that when Defendant Rodriguez went into his anal cavity for his own personal reasons, he violated "Article IV." Plaintiff states that "Article XIV was violated in Both forms, Procedural when [Defendants] White, Belt, Mitchell, Epley, Peck, McCullough, Fraliex and Beeler refused to Dismiss each and every Disciplinary report at the Committee level." As to Defendant White, Plaintiff states that Defendant White violated "Article XIV" when he concurred in the guilty finding, "furthering Arbitration and Concealing the Malfeasance at the [KSP]." Plaintiff contends that "Article VIII was violated [by Defendant] Rodriguez [when he] delegated [Plaintiff's] state and personal Property to Be removed from [Plaintiff's] cell for Days at a time." Plaintiff states that he was deprived of the "[b]are necessities of life in violation of Article XIV of the U.S. Constitutional, [Plaintiff] was forced into a cruel and Unusual living arrangement due to the Urine and feces all over the cell floor." Plaintiff further states that he was denied medical treatment for the "lacerations sustained in the inner cavity."

## II. <u>STANDARD OF REVIEW</u>

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

 "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential

claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. Official-Capacity Claims

### 1. Claims for Damages against the State-Employee Defendants

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). The official-capacity claims brought against the Defendants who are employees or officers of the Commonwealth of Kentucky are deemed claims against the Commonwealth of Kentucky. *Id.* at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment[2] acts as a bar to claims for monetary damages against Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

Accordingly, Plaintiff's official-capacity claims for monetary damages against Defendants who are employees of the Commonwealth of Kentucky will be dismissed.

---

[2] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

## 2. Claim against the CCS-Employee Defendant

Plaintiff has named one employee of CCS, Charles Aaron Davis, as a Defendant in this case. The claim against Defendant Davis in his official capacity is deemed a claim against his employer, CCS.[3] *See Prather v. Corr. Care Solutions*, No. 2016 WL 2903288, at *4 (W.D. Ky. May 18, 2016) (stating that plaintiff's official-capacity claim against an employee of CCS was actually a claim against CCS).

Municipal-liability analysis applies to § 1983 claims against private corporations like CCS. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'") (quoting *Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992)); *Detwiler v. S. Health Partners*, No. 3:16-cv-P343-DJH, 2016 WL 4083465, at *2 (W.D. Ky. Aug. 1, 2016) ("The Sixth Circuit has held that the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation such as Southern Health Partners.") (citing *Street v. Corr. Corp. of Am.*, 102 F.3d at 818). CCS cannot be held liable on a respondeat superior basis for the actions of its employees. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001); *Ruley v. S. Health Partners*, No. 4:10-CV-P34-M, 2011 WL 2214998, at *4 (W.D. Ky. June 6, 2011). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Street v. Corr. Corp. of Am.*, 102 F.3d at 817; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x at 465

---

[3] For purposes of initial review, the Court will consider CCS to be a state actor. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'") (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).

("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Plaintiff has not alleged that any policy or custom of CCS caused his alleged harm. Further, he has not alleged that any inadequacy of its employees' training caused his alleged harm. Plaintiff's complaint appears to contain allegations of an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by CCS, Plaintiff fails to establish a basis of liability against this entity and fails to state a cognizable § 1983 official-capacity claim as to Defendant Davis.

Accordingly, the official-capacity claim against Defendant Davis will be dismissed from this action.

### B. Individual-Capacity Claims

### 1. Fourth Amendment Unreasonable Search Claims

Plaintiff alleges that Defendants Rodriguez and Neely performed two unconstitutional searches of his person on April 18, 2017. As to the first incident, Plaintiff states that Defendants Rodriguez and Neely "forcefully with Malicious intent, wedged [Plaintiff's] under garments and trousers in Between [Plaintiff's] Buttocks in an attempt to" dislodge the missing iPod from Plaintiff's anal cavity. As to the second incident, which Plaintiff indicates occurred later this same date, Plaintiff states that Defendants Rodriguez and Neely "elevated [Plaintiff's] arms above head, at which time [Defendant] Rodriguez pulled [Plaintiff's] trousers and under garments down and went inside the anal cavity with [Defendant] Rodriguez's hand."

Upon consideration, the Court will allow the Fourth Amendment unreasonable search claims to proceed against Defendants Rodriguez and Neely.

## 2. Eighth Amendment Conditions-of-Confinement Claims

Plaintiff asserts that for a 24-hour period he was confined in a cell that Defendant Rodriguez ordered to be "stripped out." Plaintiff states that his personal and hygiene items were removed from the cell. He appears to state that he had no mattress, clothing except boxers or bed linens in this cell. He further states that the cell had feces and urine on the floor.

Plaintiff states that he was moved on April 19, 2017, to another cell. This cell did not have feces and urine in it, but it was stripped down so that Plaintiff had no mattress, no clothing except Plaintiff's boxers, and no hygiene items. Plaintiff states that on April 25, 2017, he was given back his "state issued property, ie. Clothing and Bed Linen."

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the

Eighth Amendment which requires that they be housed in a manner most pleasing to them . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

The Court concludes that the conditions described by Plaintiff do not constitute a sufficiently grave deprivation of a basic human need to state an Eighth Amendment violation. *See, e.g.*, *Grisson v. Davis*, 55 F. App'x 756, 757 (6th Cir. 2003) (holding that an allegation of a seven-day deprivation of a mattress, sheets, and a blanket failed to state an Eighth Amendment claim); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding no constitutional violation when the prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding that an eleven-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and the availability of cleaning supplies); *McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (finding that no Eighth Amendment violation occurred when inmates endured stained, smelly mattresses, unclean cells, no bedding for six days, no cleaning supplies for six days, no toilet paper for one day, no toiletries or clothing for six days, no shower shoes; dirty showers; cold water that did not function properly and smaller food portions); *Evans v. Fogg*, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) (no claim stated by prisoner confined for 24 hours in refuse-strewn cell and for two days in flooded cell).  The

conditions to which Plaintiff alleges he was subjected may have been unpleasant, but were not unconstitutional.

Accordingly, the Eighth Amendment conditions-of-confinement claims will be dismissed.

### 3. Due Process Claims and the Request for Restoration of Good-Time Credits

Plaintiff asserts due process violations as to institutional disciplinary proceedings taken against him. Plaintiff seeks monetary relief, to have the disciplinary charges vacated, and restoration of lost good-time credits resulting from him being found guilty of approximately five disciplinary charges. It appears that Plaintiff brings these claims against Defendants Belt, Beeler, Burnett, Epley, Fraliex, McCullough, Ben Mitchell, Seth Mitchell, Peck, Roberts, and White.

Under the *Heck* doctrine:

In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings. Later, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration". The relief Plaintiff seeks, the Court to

vacate his institutional disciplinary charges and restore the lost good-time credits, if successful, would necessarily demonstrate the invalidity of the duration of Plaintiff's confinement. Thus, Plaintiff's request for monetary relief as to the disciplinary charges brought against him is barred by *Heck*.

Furthermore, to the extent Plaintiff seeks restoration of lost good-time credits, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). A finding that Defendants violated Plaintiff's constitutional rights when they convicted him of the disciplinary charges and took away his good-time credits would result in Plaintiff's speedier release; thus, Plaintiff's sole remedy for these claims challenging the loss of good-time credits is a writ of habeas corpus.

Accordingly, Plaintiff's due process claims and the claim seeking restoration of good-time credits will be dismissed.

### 4. Retaliation Claims

Reading Plaintiff's complaint in the light most favorable to Plaintiff, as the Court must in performing its review, it appears that Plaintiff is asserting that the disciplinary reports filed against Plaintiff on April 25, 2017, April 26, 2017, May 2, 2017, May 3, 2017, and May 20, 2017, the decisions of guilt made by the adjustment committees when deciding these claims, and the affirmation of guilt by Defendant White of the guilty decisions, were all done in retaliation for Plaintiff filing PREA claims and/or grievances. Plaintiff asks the Court to vacate the adjustment committee decisions and restore all forfeited good-time credits. It appears that

Plaintiff brings these claims against Defendants Belt, Beeler, Burnett, Epley, Fraliex, McCullough, Ben Mitchell, Seth Mitchell, Peck, Roberts, and White.

Upon consideration, the Court will allow Plaintiff's First Amendment retaliation claims to proceed against Defendants Belt, Beeler, Burnett, Epley, Fraliex, McCullough, Ben Mitchell, Seth Mitchell, Peck, Roberts, and White in their individual capacities.

### 5. Eighth Amendment Failure-to-Treat Claim

Plaintiff alleges that when Defendants Rodriguez and Neely engaged in the unconstitutional searches of Plaintiff's rectal cavity, that Plaintiff's rectal cavity was injured and painful. Plaintiff states that he was brought to see Defendant Davis, a nurse, on April 25, 2017, for this problem. According to Plaintiff, Defendant Davis just questioned Plaintiff about who molested him and then had the guards return Plaintiff to his cell without treating Plaintiff's medical problem.

Upon consideration, the Court will allow Plaintiff's Eighth Amendment failure-to-treat claim against Defendant Davis to proceed.

### 6. Claim Regarding Criminal Charges

As for Defendant Meyers, Plaintiff states that she brought dangerous illegal contraband, an iPod, into the prison. Plaintiff states that she may be prosecuted because of this conduct.

It is unclear what claim Plaintiff may be trying to bring against Defendant Meyers. To the extent that Plaintiff is attempting to bring criminal charges against Defendant Meyers, Plaintiff does not have a constitutional right to initiate or compel the initiation of criminal proceedings against another individual. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d

581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person."); *Osuch v. Gregory*, 303 F. Supp. 2d 189, 194 (D. Conn. 2004) ("An alleged victim of a crime does not have a right to have the alleged perpetrator investigated or criminally prosecuted."); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002). Therefore, Plaintiff cannot seek criminal charges against Defendant Meyers in this civil action.

Accordingly, this claim against Defendant Meyers will be dismissed for failure to state a claim upon which relief may be granted. Further, there being no other claims against Defendant Meyers, she will be dismissed from this action.

### 7. Claim Regarding Threats and Harassing Statements

Plaintiff states that some of the Defendants made threats that they would spray Plaintiff with mace or pepper spray. According to Plaintiff, some Defendants made derogatory statements about him being a Muslim.

Although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Jackson v. Hopkins Cty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. Nov. 9, 2012) ("[W]hile reprehensible and not condoned, racial epithets and verbal abuse alone are insufficient to state a constitutional violation under § 1983."); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn.

Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."); *McGowan v. Cantrell*, No. 1:05-cv-334, 2007 WL 2509704, at *16 (E.D. Tenn. Aug. 30, 2007) ("While defendants' alleged conduct is despicable and to be condemned, it does not violate the Constitution because neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment.").

Accordingly, the claims of threats and verbal harassment fail to state a claim upon which relief may be granted and will be dismissed.

### 8. Religion Claim

Plaintiff states that Defendants Rodriguez and Neely's actions of searching his rectal cavity and then taking him down the stairs to the cell house strip cage while his "male extremities" and buttocks were exposed "violated a tenet of [his] Religious Beliefs as a professed Muslim."

Upon consideration, the Court will allow this claim against Defendants Rodriguez and Neely to proceed.

### IV. <u>ORDER</u>

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1)  The official-capacity claims for monetary damages against the Defendants who are employees of the Commonwealth of Kentucky are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to

28 U.S C. § 1915A(b)(2) because they seek monetary relief from Defendants who are immune from such relief;

(2)  The official-capacity claim against Defendant Davis is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3)  The Eighth Amendment conditions-of-confinement claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(4)  The due process claims and claims seeking restoration of good-time credits are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and because they are barred by the *Heck* doctrine;

(5)  The claim seeking criminal charges is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(6)  The claims regarding threats and verbal harassment are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(7)  There being no remaining claim against her, Defendant Meyers is **DISMISSED** from this action.

The **Clerk of Court** is **DIRECTED** to terminate Defendant Joy Meyers from the docket of this action.

**IT IS FURTHER ORDERED** as follows:

(1)  The Fourth Amendment unreasonable search claims against Defendants Rodriguez and Neely in their individual capacities will proceed;

(2)  The First Amendment retaliation claims against Defendants Belt, Beeler, Burnett, Epley, Fraliex, McCullough, Ben Mitchell, Seth Mitchell, Peck, Roberts, and White in their individual capacities will proceed;

(3)  The Eighth Amendment failure-to-treat claim against Defendant Davis in his individual capacity will proceed; and

(4)  The religion claim will proceed against Defendants Rodriguez and Neely in their individual capacities.

The Court passes no judgment on the merits or ultimate outcome of this case.  The Court will enter a separate Scheduling Order to govern the development of the proceeding claims.

Date:  March 13, 2018

**Greg N. Stivers, Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Counsel of Record
4416.003